1

2

3

4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9    KEITH BOWDEN,

10              Plaintiff,                    CIV. S. 04-1854 GGH

11        vs.

12
     JO ANNE B. BARNHART,                     ORDER
13   Commissioner of Social Security,

14
               Defendant.
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits

18   ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI respectively, of the

19   Social Security Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary

20   Judgment or Remand is denied, the Commissioner's Motion for Summary Judgment is granted,

21   and judgment is entered for the Commissioner.

22    BACKGROUND

23            Plaintiff, born July 24, 1962, applied for disability benefits on September 24,

24   2001. (Tr. at 326, 16.)  Plaintiff alleged he was unable to work since October 15, 2001, due to

25   headaches, and neck and back pain.  (Tr. at 336.)

26   \\\\\

1

1    In a decision dated September 24, 2003, ALJ Antonio Acevedo-Torres determined

2  that plaintiff was not disabled.[1]  The ALJ made the following findings:

3    1.    The claimant met the disability insured status requirements
          of the Act on September 24, 2001, the date the claimant
4          stated he became unable to work, and continues to meet
          them through the date of this decision.

5
     2.    The claimant has not engaged in substantial gainful activity
6          since October 15, 2001.

7    3.    The medical evidence establishes that the claimant has
          severe back pain secondary to degenerative disc disease and
8          neck pain secondary to cervical sprain/strain, but that he
          does not have an impairment or combination of
9          impairments listed in or medically equal to one listed in
          Appendix 1, Subpart P, Regulations No. 4.

10

11  \\\\\

12  _____

     [1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
13  Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
    disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
14  part, as an "inability to engage in any substantial gainful activity" due to "a medically
    determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
15  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
    See 20 C.F.R. §§ 404.1520,  404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
16  137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
              Step one:  Is the claimant engaging in substantial gainful
17      activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
18              Step two:  Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not disabled is
19      appropriate.
              Step three:  Does the claimant's impairment or combination
20      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically
21      determined disabled.  If not, proceed to step four.
              Step four:  Is the claimant capable of performing his past
22      work?  If so, the claimant is not disabled.  If not, proceed to step
        five.
23              Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
24      disabled.  If not, the claimant is disabled.
    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
25        The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26  burden if the sequential evaluation process proceeds to step five.  Id.

1        4.      The claimant's allegations regarding the degree of his pain and limitations are found to be not fully credible for the reasons stated above.

2

3        5.      The claimant is precluded from lifting more than 50 pounds occasionally, 20 pounds frequently with an ability to stand, walk and sit 6 hours in an 8-hour workday.  There are no non-exertional limitations (20 CFR §§ 404.1545 and 416.945).

4

5

6        6.      The claimant is unable to perform his past relevant work as a soldier, sorting equipment cleaner or collector's assistant. However the claimant is able to perform his past relevant work as a warehouseman, packager and dishwasher.

7

8

9        7.      The claimant is 40-years-old, which is defined as a younger individual (20 CFR §§ 404.1563 and 416.963).

10       8.      The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

11

12       9.      In unable to perform his past relevant work, [sic] Section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16, and Rules 203.28 and 203.31 of Appendix 2, Subpart P, and Regulations No. 4 direct a conclusion that the claimant is not disabled.

13

14

15      10.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

16

17  (Tr. at 23-24.)

18  ISSUES PRESENTED

19        Plaintiff has raised the following issue:  Whether the ALJ Improperly Rejected the

20  Opinions of Plaintiff's Examining Physicians.

21  LEGAL STANDARDS

22        The court reviews the Commissioner's decision to determine whether (1) it is

23  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

24  the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

25  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

26  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

3

1  accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

2  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

3  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

4  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

5  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

6  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

7  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

8  ANALYSIS

9      A.  The ALJ Property Evaluated The Opinions of Plaintiff's Examining Physicians

10      Plaintiff contends that the ALJ improperly rejected the opinions of examining

11  physicians, Drs. Rose and Kaplan.

12      The weight given to medical opinions depends in part on whether they are

13  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

14  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2]  Ordinarily,

15  more weight is given to the opinion of a treating professional, who has a greater opportunity to

16  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

17  Cir. 1996).

18      To evaluate whether an ALJ properly rejected a medical opinion, in addition to

19  considering its source, the court considers whether (1) contradictory opinions are in the record;

20  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

21  a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

22

23     [2]  The regulations differentiate between opinions from "acceptable medical sources" and

24  "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status

25  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"

26  accordingly are given less weight than opinions from "acceptable medical sources."

1   81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

2   be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

3   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

4   examining professional's opinion (supported by different independent clinical findings), the ALJ

5   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

6   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

7   weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

8   2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and

9   supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

10  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

11  881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

12  insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

13          In this case, Dr. Rose and Dr. Kaplan, partnered neurologists, saw plaintiff on

14  August 6 and September 10, 2002 for consultative treatment purposes at the request of plaintiff's

15  treating chiropractor.  On August 6, 2002, Dr. Rose noted that plaintiff had suffered a work-

16  related injury on May 26, 2001 wherein he was moving an entertainment center weighing 175

17  pounds which fell onto his feet, injuring his feet and back.  (Tr. at 660.)  Exam revealed

18  tenderness in the neck but full range of motion, no crepitus, and no evidence of spasm.  (Id. at

19  662.)  The back was tender, "with 35 percent limitation of flexion, 25 percent limitation of lateral

20  flexion and rotation bilaterally, and 15 percent limitation of extension."  Straight leg raising was

21  positive, with 80 degrees on the left and 85 degrees on the right.  (Id.)  Exam of the feet was

22  normal including normal range of motion, despite plaintiff's complaints of foot pain.  (Id.)  Dr.

23  Rose diagnosed plaintiff with stress headaches, cervicodorsal myoligamentous strain,

24

25      [3]  The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26  (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

5

1  dorsolumbosacral myoligamentous chronic sprain syndrome with question of developing

2  radiculopathy, bilateral foot trauma with residual symptoms, and gastrointestinal problems.  (Tr.

3  at 664.)  Dr. Rose recommended vigorous physiotherapy, manipulations, and medications.  (Id. at

4  665.)  If plaintiff's problems continued, Dr. Rose advised considering neurodiagnostic testing of

5  the back and lower extremities, in view of possible radiculopathy.  If plaintiff's foot problems

6  continued, he would need to see a podiatrist.  Dr. Rose concluded that plaintiff was temporarily

7  totally disabled due to the 2001 work injury.  (Id. at 666.)

8            The only other record of consultation by the Kaplan/Rose office was on

9  September 10, 2002.  Dr. Kaplan's "interim consultation report" indicated that plaintiff was seen

10  at this time due to dizziness, headaches, insomnia and constant low back pain.  (Tr. at 655.)

11  Plaintiff reported that since the last visit, he had taken Darvocet and Bextra which were helping

12  "considerably."  (Id.)  Range of motion in the back was reduced to 65 percent of normal.  Straight

13  leg raising was 80 degrees on the left and 60 degrees on the right.  (Id. at 656.)  Plaintiff was

14  diagnosed with headaches, cervical sprain/strain disorder, and lumbosacral sprain/strain disorder

15  with lumbosacral radiculopathy.  (Id.)  As a result, Dr. Kaplan requested an electromyogram.  An

16  MRI revealed abnormality at L5-S1 with disc protrusion as well as right L5 spinal nerve root

17  entrapment.  (Id. at 657.)[4]  This neurologist concluded that plaintiff was temporarily totally

18  disabled, and would be disabled until December, 2004.  (Id.; Tr. at 659.)  He limited plaintiff to

19  \\\\\

20

21  [4] This rather severe characterization of the report (also picked up and accepted by the
Commissioner's consulting physician) does not appear to be consistent with the report itself:
      Findings: Vertebral discs all have normal height.  There is a mild decrease in disc
22    signal present at L5-S1.  The rest of the discs have normal signal intensity.
      At L5-S-1, a borderline to mild bulge of disc is present posterolateral to the right
23    side.  This narrows the right neural foramen.  No definite nerve root impingement
      is seen.
24    The rest of the discs do not demonstrate significant bulges or herniations....As
      indicated, there is a mild narrowing of the right neural foramen at L5-S-1....The
25    patient has a capacious spinal canal.  Visualized spinal cord and paravertebral soft
      tissues are unremarkable in appearance.
26  (Tr. 583).

6

1   no repetitive bending, lifting, stooping, and no prolonged walking, sitting, or standing.  (Id. at

2   659.)

3   　　　　　The ALJ specified in regard to Dr. Rose's report that the objective medical

4   evidence did not support a conclusion of total disability, and he construed this physician's report

5   as finding only that plaintiff could not do his past work as an assistant collector which required

6   lifting up to 125 pounds.  (Tr. at 20.)  In regard to Dr. Kaplan, the ALJ stated that the functional

7   limitations imposed by this physician were not supported by other treating records or the

8   objective findings in both Rose's and Kaplan's reports.  The ALJ also placed weight on the fact

9   that these doctors did not begin treating plaintiff until 2002, yet opined that plaintiff was disabled

10  as of May, 2001, apparently relying on his subjective complaints, and that he would be disabled

11  until December, 2004, without any basis for such a prediction.  As a result, the ALJ rejected

12  these opinions in favor of Dr. McIntire's opinion which he found was most consistent with

13  treating records.

14  　　　　　Dr. McIntire performed an orthopedic evaluation on July 12, 2003, and reviewed

15  plaintiff's medical records.  Although this practitioner did not have the actual MRI record, he had

16  other records interpreting it to indicate a disk protrusion at L5-S1 and right L5 root entrapment.

17  (Tr. at 694.)  Nevertheless, Dr. McIntire noted that plaintiff was not describing right L5

18  symptoms or radicular pain.  (Id.; Tr. at 696.)  Plaintiff's coordination, station and gait were

19  normal, and plaintiff could walk on his heels and toes.  There was no foot drop or Romberg.  (Id.

20  at 695.)  Plaintiff was not using an assistive device and none was indicated.  (Id.)  Range of

21  motion in the cervical area was normal, as it was in all other extremities.  (Id. at 695-96.)  There

22  was only mild loss of range of motion of the lumbar spine, with flexion at 0-80/90 degrees.

23  Extension was 0-20/25 degrees.  Lateral flexion was 0-25/25 degrees on both sides.  Straight leg

24  raising and Lasegue's were negative on both sides in both seated and supine positions.  (Id. at

25  696.)  Exam of the lumbar spine indicated no vertebral abnormalities, no paraspinal muscle

26  spasms, normal lumbar curvature, no tenderness, negative axial compression and axial rotation,

1  and no sciatic notch tenderness.  Plaintiff was diagnosed with "history of lumbar strain,

2  degenerative disk disease." (Id.)  Dr. Kaplan thought that objective findings indicated no lumbar

3  radiculopathy, myelopathy, no significant vertebral deformities or paraspinal muscle spasms.

4  Loss of range of motion of the spine was only mild, gait normal, and no guarding was evident

5  when plaintiff was seated.  Dr. Kaplan would limit plaintiff to lifting or carrying a maximum of

6  twenty pounds frequently or fifty pounds occasionally.  He would not limit plaintiff in any other

7  manner.  (Id.)

8          Plaintiff mistakenly describes Dr. McIntire as a non-examining doctor; however,

9  this physician spent as much time with plaintiff as either Dr. Rose or Dr. Kaplan.  Plaintiff's

10 Mtn. at 8:16.  All of these reports should be given similar weight, as based on one-time

11 evaluations of plaintiff.  Therefore, it was within the ALJ's province to chose to rely on one

12 consultant over another.  He gave specific and legitimate reasons in rejecting the opinions of Drs.

13 Rose and Kaplan, properly following the standards set forth in Lester.[5]

14         Moreover, the ALJ was not required to credit the opinions of Drs. Rose and

15 Kaplan that plaintiff was disabled.  "A statement by any physician that the claimant is disabled or

16 unable to work is a conclusion on the ultimate issue to be decided . . . and is not binding on the

17 [ALJ] in reaching his determination as to whether the claimant is disabled within the meaning of

18 the [Act]." Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856

19 F.2d 1335 (9th Cir. 1988)), 20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen,

20 881 F.2d 747, 750-51 (9th Cir. 1989).

21    B.  Supplemental Hearing

22         Plaintiff asserts that he requested a supplemental hearing but the ALJ denied the

23 request as unnecessary.  (Tr. at 23.)  Plaintiff claims a hearing with a medical expert would

24 resolve the conflict between Dr. McIntire's opinion and that of Dr. Rose.  The ALJ noted that

25

26 [5] Plaintiff does not contest the ALJ's discounting of treating chiropractor Dr. Chipain's opinions.  Therefore, the court will not address these other records.

8

1    plaintiff did not give a reason for his original request.  (Tr. at 23.)  This court finds that the record

2    contains sufficient information concerning plaintiff's functional capacity, and a medical expert is

3    not necessary.

4    CONCLUSION

5              ACCORDINGLY, plaintiff's Motion for Summary Judgment is DENIED, the

6    Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed

7    to enter Judgment for the Commissioner.

8    DATED: 1/31/06

9                                              /s/ Gregory G. Hollows

10                                             GREGORY G. HOLLOWS
                                               U.S. MAGISTRATE JUDGE

11   GGH/076
     Bowden1854.ss.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26